[Sac. No. 644.   Department Two.—December 15, 1900.]

## LAKE SHORE CATTLE COMPANY, Respondent, v. MO-DOC LAND AND LIVESTOCK COMPANY, Appellant.

SALE OF CATTLE TO SUPERINTENDENT OF CORPORATION—ACTION AGAINST CORPORATION—SUPPORT OF VERDICT—CONFLICTING EVIDENCE.—In an action against a corporation, whose business it was to pur-chase cattle, and which transacted all of its business in the county through its superintendent, to recover the purchase price of cattle sold, where the evidence was conflicting as to whether the purchase was made by the superintendent as actual or osten-sible agent for the corporation, or for himself individually, a verdict against the corporation will not be disturbed upon ap-peal.

ID.—INDIVIDUAL NOTE OF SUPERINTENDENT.—The fact that the superin-tendent who purchased the cattle from plaintiff gave his in-dividual note to the plaintiff for the balance of the purchase price is merely a circumstance in favor of the corporation de-fendant, but is not conclusive of the issue whether the corpora-tion defendant made the purchase.

ID.—INSTRUCTION AS TO ALLOWANCE OF INTEREST—CONSTRUCTION OF VER-DICT—CLERICAL ERROR—JUDGMENT.—Where the court instructed the jury that if they should find for the plaintiff they should add interest from the time the amount found became due to the date of the verdict, a verdict allowing interest on the amount found due, "at .07 per cent per annum," from a specified date until the date of the verdict, is to be construed as an intended com-pliance with the instructions of the court. The expression ".07" is to be regarded as clearly a clerical error; and judgment was properly entered for the amount found due, with interest at seven per cent per annum.

ID.—EVIDENCE OF SIMILAR PURCHASES BY SUPERINTENDENT.—Evidence is admissible to show that the superintendent of the corporation defendant had made similar purchases of cattle from other per-sons for the corporation in his own name.

ID.—PROOF OF AGENCY—DECLARATIONS—TESTIMONY OF SUPERINTENDENT.—The superintendent of the defendant corporation may testify to his agency and to purchases of cattle made by him for the cor-poration and reported to it; and such testimony is not subject to the objection that the agency of the superintendent cannot be proved by his declarations.

ID.—BOOKS OF SUPERINTENDENT—REPORTS OF ACCOUNTS.—The books of ac-count between the superintendent and the corporation, in so far as included in reports made by him to the corporation, whether strictly admissible or not, are harmless, and where other entries

not reported are of slight importance, there is no prejudicial error in their admission in evidence.

APPEAL from a judgment of the Superior Court of Modoc County and from an order denying a new trial.   J. W. Harrington, Judge.

The facts are stated in the opinion of the court.

Spencer & Raker, and Clarence A. Raker, for Appellant.

Jarrett T. Richards, G. F. Harris, E. C. Bonner, and H. L. Spargur, for Respondent.

McFARLAND, J.—This action was brought to recover four thousand eight hundred dollars and interest, balance due on an alleged sale of cattle by plaintiff to defendant made November 6, 1892.   The jury returned a verdict for plaintiff for the amount claimed, and judgment was rendered accordingly. Defendant appeals from the judgment and from an order denying its motion for a new trial.

The transcript presents a dreary mass of matter covering over eight hundred printed pages, and should not have occupied more than one-fourth of that amount of space.   It might be somewhat justly characterized by the comparison of "two grains of wheat hid in two bushels of chaff," which Bassanio uses to illustrate the "reasons" of Gratiano.   A good deal of the testimony of witnesses is given at length by question and answer.   Many questions substantially the same are asked over and over again, and a very large part of the transcript is taken up with objections of counsel—the same objections being repeated many times.   Under the head of "errors of law occurring at the trial," there are four hundred and ninety-nine separate specifications, covering one hundred and twenty-six pages; to the points that the evidence is insufficient to justify the verdict and that it is against law, there are many other specifications; and there are, in addition, about forty exceptions to the giving and refusing of instructions.   Most, although not quite all, of these exceptions and specifications are mentioned in appellant's briefs—the briefs themselves covering over two hundred printed pages.   It is, therefore, entirely impracticable to undertake to notice appellant's points in detail.

The respondent and appellant are corporations.  It is averred in the complaint that the appellant, acting by and through its agent, W. H. Nelson, bought the cattle in question of respondent; and it is not disputed that one C. E. Crowder, superintendent of respondent, sold the cattle at the time mentioned in the complaint to said Nelson, who was then superintendent of the appellant.  The number of cattle sold, the price, and the facts that about one-third of the purchase price was paid at the time, and that four thousand eight hundred dollars was the balance remaining unpaid, are all admitted, or proved beyond question.  The real merits of the case are involved in the question whether or not the purchase was made by Nelson as agent of and for the corporation appellant.  Appellant contends that Nelson made the purchase entirely for himself individually, that he was not either the actual or ostensible agent of appellant for the purpose of making such purchase, and that therefore appellant was not bound by the transaction.  Respondent contends that he was appellant's actual agent, and, moreover, that whatever may have been the private understanding between him and appellant, the latter, by its acts, clothed him with ostensible authority upon which respondent had the right to rely.

As to this question the evidence was conflicting.  The headquarters of appellant was in the city of San Francisco, while its main business was carried on in Modoc county, several hundred miles distant from said city.  Its business is described in its charter as "the dealing in, buying and selling, management and disposition of land and livestock, and everything pertaining thereto in all respects."  It was incorporated in 1886, and a few months afterward Nelson, as the minute-book of the directors shows, was elected vice-president and superintendent, and as such he was "authorized to sign checks, and make and sign contracts necessary for the proper performance of the business of the corporation."  He was the only member of the corporation who lived in Modoc county; and from December, 1886, to April, 1893, during which period the sale here involved occurred, he was superintendent and attended to all the business of appellant in that county.  The appellant had a large tract of land in Modoc county, and raised and bought and sold

cattle there, and the business was done entirely by and through Nelson, who was the only agent or representative of the appellant in that region of the country. These general facts were themselves strong evidence to the point that appellant had intrusted Nelson with all business in that remote country and clothed him with authority to do all acts necessary to its transaction. We will not undertake to here review the evidence. It was "conflicting" within the rule so often stated, and it cannot be said that there was no substantial evidence to sustain the verdict. The fact so much relied on by appellant, that Nelson signed his individual name to the note given for the balance of the purchase price, is merely a circumstance more or less favorable to appellant's contention; it is not by any means conclusive of the issue.

Many of appellant's objections were to evidence introduced by respondent to show that Nelson had made similar purchases of other persons; and we think that such evidence was entirely proper. There were also many objections to the testimony of Nelson upon the ground that he should not be allowed to testify as to his agency and his acts in purchasing the cattle for appellant. These objections were apparently on the theory that his declarations as to agency were not admissible; but he was present on the witness stand testifying to the matters objected to, and we see no ground for rejecting his testimony. We see no point in the objections made to the introduction of the books of the appellant. They were produced in court by appellant as appellant's books in response to a demand made for their production. We have no doubt that appellant's objections to evidence introduced by respondent were properly overruled, except, perhaps, in one instance. Nelson himself kept a book in which he, as superintendent, made entries of items of account between him and appellant, and respondent was allowed, over appellant's objections, to read certain entries from that book. The point that this was error is not very strongly urged by appellant in the briefs; still, it is made. Whether or not the entries in this book were strictly admissible under the general law as to books of account is a somewhat doubtful question; but we do not deem it necessary to definitely determine it, because most of the items of any considerable

significance which were introduced in evidence were included in reports sent by Nelson, as superintendent, to the appellant, and the others were of too little importance to be prejudicial or to warrant a reversal.

We see no error in the instructions given at the request of respondent. As to the instructions asked by appellant, the court gave the first twenty-five instructions asked, many of which are quite elaborate, and gave also three others with slight modifications. It would seem that these numerous instructions ought to include all that counsel could reasonably ask on one side of the case, and we think that they do. The instructions given presented the law of the case fairly and correctly to the jury, and sufficiently include whatever was correct in the instructions refused; and we do not think that any error was committed in the matter of giving and refusing instructions.

The court instructed the jury that if they found for plaintiff in any amount, they should add to such amount interest from the time it became due until the date of the verdict "at the rate of seven per cent per annum, simple interest"; and the verdict was for four thousand eight hundred dollars, "with interest at .07 per cent per annum from November 6, 1892," until the date of the verdict. Judgment was entered for four thousand eight hundred dollars, with interest at seven per cent per annum, and counsel for appellant strenuously contend that this was error because ".07 per cent" does not mean "seven per cent." It is sufficient to say that the expression ".07" was clearly a clerical error, and must be construed as an intended compliance with the instructions of the court.

We have noticed the prominent facts of the case, and we deem it enough to say in conclusion that the record presents no ground for reversal of the judgment or of the order denying a new trial.

The judgment and order appealed from are affirmed.

Temple, J., and Beatty, C. J., concurred.

Hearing in Bank denied.